FILED
RICHARD W. NAGEL
CLERK OF COURT

17 JUN -2 AM 10: 14

U.S. DISTRICT COURT
SOUTHERN DIST OHIO
WEST DIV CINCINNATI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:17CR-61 |
| Plaintiff, | : | |
| | : | JUDGE J. BLACK |
| v. | : | |
| | : | |
| ENSON TRADING LLC, | : | **INFORMATION** |
| d/b/a ETERNAL FOOD SERVICE, | : | |
| | : | 31 U.S.C. § 5331 |
| Defendant. | : | 31 U.S.C. § 5322(b) |
| | : | 18 U.S.C. § 371 |
| | : | 49 U.S.C. § 521(b)(6)(A) |

**INTRODUCTION:**

At all times material to this Information:

1. **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE,** is a limited liability company that operates in Hamilton County, Ohio, which is in the Southern District of Ohio. **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** grew out of the establishment of Eternal Food Service, Inc. which began in 2009.

2. Eternal Food Service, Inc. began as a wholesale food storage facility and distributor to Asian restaurants operating in the Southern District of Ohio and elsewhere. The business was located on Beekman Street in Cincinnati, Ohio.

3. In 2010, Eternal Food Service, Inc. started using the corporate name Eternal Trading Corporation and the name Eternal Trading d/b/a Eternal Food Service was established.

4. In 2012, Eternal Trading d/b/a Eternal Food Service combined businesses with Enson Trading LLC and moved the headquarters from the Beekman facility, to 605 North Wayne Avenue, Lockland, Ohio. It continues to operate as **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE.**

5. **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** distributes its products to primarily Asian restaurants located throughout Ohio, Kentucky, Indiana, Illinois, Missouri, West Virginia, Tennessee, Georgia, Alabama, and Pennsylvania.

6. At all times relevant to this Information, Federal laws and regulations required that any person engaged in a trade or business that receives cash in excess of ten thousand ($10,000.00) dollars in one transaction or two or more related transactions to file a federal

Form 8300 within 15 days of receipt of the reportable cash. The Form 8300 must contain the name, address and taxpayer information number of the person from whom the cash was received, the amount of cash received and the date and nature of the transaction.

7. The Federal Motor Carrier Safety Regulations (FMCSR), 49 C.F.R. Parts 350 to 399, govern the activities of motor carriers.

8. There are various laws and statutes that concern the operations of motor carriers and which the Secretary of Transportation has delegated to the Federal Motor Carrier Safety Administration (FMCSA), for example: 49 U.S.C., subtitle IV, part B, Chapter 139 relating to registration and financial responsibilities of a carrier, delegated in 49 C.F.R. § 1.73(a)(5); Chapter 313, relating to commercial motor vehicle operators, delegated in 49 C.F.R. § 1.73(e)(l); Chapter 311, subchapters I, III & IV related to commercial motor vehicle programs, safety regulations, delegated in 49 C.F.R. § 1.73(g); and 49 U.S.C. § 31502 relating to hours of service of employees and safety of operations and equipment of motor carriers, delegated in 49 C.F.R. § 1.73(1).

9. A motor carrier is forbidden from operating unless the motor carrier is registered in accordance with the requirements proscribed by the Secretary of Transportation (as delegated to FMCSA), 49 U.S.C. §§ 13901 & 13902. FMCSA registers motor carriers by issuing certificates to operate pursuant to 49 C.F.R § 365.101. The application process requires the motor carrier representative to complete an application form, OP-1, and submit that form under penalty of perjury. The application may be completed and submitted through an online official website.

10. FMCSA is required to revoke the registration/certificate to operate when a motor carrier receives an unsatisfactory safety rating, 49 U.S.C. § 13905(f)(l)(B). In the event that violations are determined to pose an imminent hazard, FMCSA may immediately place a motor carrier out of service, which makes it a violation for the motor carrier to operate commercial motor vehicles in interstate or intrastate commerce.

**THE UNITED STATES ATTORNEY CHARGES:**

**COUNT 1**
**Failure to File Form 8300 By A Nonfinancial Trade Or Business**
**For Cash Transactions Over $10,000**
**(Violation of 31 U.S.C. §§ 5331 & 5322(b))**

On or about June 2, 2012, in the Southern District of Ohio, the defendant, **ENSON TRADING LLC, d/b/a ETERNAL TRADING CORPORATION**, a nonfinancial trade or business, did willfully violate Title 31, United States Code, Section 5331, in that it received a total of $12,173.54 in cash payments from New Taste Buffet in the course of its trade or business without filing a Report of Cash Payments Over $10,000 Received in a Trade or Business (Form

8300) at such time and in such manner as required by regulations prescribed by the Secretary of the Department of Treasury, as part of a pattern of illegal activity involving more than $100,000 in a twelve month period.

**In violation of 31 U.S.C. §§ 5331 and 5322(b).**

## COUNT 2
### Conspiracy to Continue Operation After Imposition of an Out-Of-Service Order
### (Violation of 18 U.S.C. § 371)

1. Paragraphs 1-10 of the Introduction to this Information are incorporated herein by reference.

2. From on or about June 23, 2010 to on or about July 14, 2014, in the Southern District of Ohio and elsewhere, the Defendant **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE**, did knowingly combine, conspire, confederate, and agree with persons known and unknown to the United States Attorney to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the United States Department of Transportation, Federal Motor Carrier Safety Administration, an agency of the United States, in the administration of the Federal Motor Carrier Safety Regulations set out at 49 C.F.R. Parts 350 to 399, and in violation of 49 U.S.C. § 521(b)(6)(A).

### OBJECT OF CONSPIRACY

The purpose of the conspiracy was for **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE**, to continue to operate its motor carriers even though its original company and the corporations established after-the-fact had been issued unsatisfactory safety ratings and consequently issued Out-of-Service Orders by FMCSA, which required them to cease all commercial motor vehicle operations. Through the continued operation of the motor carriers,

**ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** continued to deliver goods to its customers and obtain substantial amounts of revenue.

## MANNER AND MEANS

A. Beginning in or about June 2010 and continuing up until or about July 21, 2104, **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE**, which at that time operated as a wholesale food storage facility and a commercial motor carrier as defined in 49 U.S.C. § 13102, transported property in interstate commerce using motor vehicles engaged in the business of interstate transportation.

B. The Motor Carriers Safety Regulations, 49 C.F.R. Parts 350 to 399, govern the activities of motor carriers. The Federal Motor Carrier Safety Administration ("FMCSA"), a division of the United States Department of Transportation ("USDOT"), is an agency of the United States.

C. As a commercial motor carrier, **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** was subject to the jurisdiction of the FMCSA and Federal motor carrier safety statutes and regulations, including the FMCSRs, as well as the Orders of the USDOT and FMCSA. **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** was required to comply with the applicable federal statutes and regulations.

D. On June 23, 2010, FMCSA conducted a Compliance Review of Eternal Food Services Corporation ("Eternal Food"). The result of the Compliance Review was an unsatisfactory safety rating based upon critical violations of several regulations. Eternal Food had 60 days to respond to the unsatisfactory safety rating and provide an effective plan to get back in compliance. Eternal Food was issued an Out-of-Service ("OOS") Order on August 24, 2010. Once

the OOS Order took effect, **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE,** was no longer allowed to operate as a commercial motor vehicle in interstate or intrastate commerce.

## OVERT ACTS

1. On August 16, 2010, Heng Hua Trading, Incorporated ("Heng Hua"), filed an MCS-150 (new carrier) application with FMCSA. This was eight days before Eternal Food was to be put OOS. On August 19, 2010, Heng Hua was incorporated and registered with FMCSA in anticipation of the OOS Order by FMCSA to Eternal Food. Heng Hua delivered the goods of Eternal Food to the exact same customers and received revenue on behalf of Eternal Food.

2. On February 23, 2012, FMCSA conducted a Compliance Review of Heng Hua. The result of the Compliance Review was an unsatisfactory safety rating based upon serious violations of the regulations. Heng Hua had 60 days to respond to the unsatisfactory safety rating and provide an effective plan to get back in compliance. Heng Hua was issued an OOS Order by FMCSA to go into effect April 30, 2012. Once the OOS Order took effect, Huang Hua was no longer allowed to operate as a commercial motor vehicle in interstate or intrastate commerce.

3. Six days before Heng Hua's OOS Order was to take effect, National Trucking, LLC ("National Trucking") filed Articles of Incorporation. The company subsequently filed an MCS-150 application with FMCSA on April 30, 2012. National Trucking delivered the goods of Eternal Food, which had reincarnated into Heng Hua, to the exact same customers and received revenue on behalf of Eternal Food.

4. On June 25, 2012, FMCSA conducted a Compliance Review of National Trucking. The result of the Compliance Review was an unsatisfactory safety rating base upon several violations of regulations. National Trucking had 60 days to respond to the unsatisfactory rating. An OOS Order was issued by FMCSA on August 28, 2012. Once the OOS Order took effect,

National Trucking was no longer allowed to operate as a commercial motor vehicle in interstate or intrastate commerce.

5. On May 8, 2012, Eternal Trading Corporation ("Eternal Trading") filed its MCS-150 application with FMCSA. Eternal Trading had reincarnated from National Trucking, which was an offshoot of Heng Hua, and it delivered goods to the exact same customers as Eternal Food. Eternal Trading also received revenue on behalf of Eternal Food. On December 4, 2012, FMCSA conducted a Compliance Review of Eternal Trading. The result of the Compliance Review was an unsatisfactory safety rating based upon several violations of regulations. Eternal Trading was issued an OOS Order by FMCSA to go into effect on February 9, 2013. Once the OOS Order took effect, Eternal Trading was no longer allowed to operate as a commercial motor vehicle in interstate or intrastate commerce.

6. **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** grew out of Eternal Food Service and its progeny in 2012.

7. The pattern of **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** assisting or attempting to assist in the circumvention of the FMCSA OOS Orders continued with additional companies, including Aspiron, Incorporated ("Aspiron") on January 3, 2013 and FC Logistics, LLC ("FC Logistics") on May 8, 2013.

8. **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** conspired with Heng Hua, National Trucking, Eternal Trading Corporation, Aspiron, and FC Logistics to seek motor carrier safety registrations in order to continue operations and avoid out-of-service orders by the FMCSA.

9. On July 14, 2014, the interconnection, and thus agreement, between the various companies and **ENSON TRADING LLC, d/b/a ETERNAL FOOD SERVICE** to deliver goods

6

and receive revenue on behalf of Eternal Food after the issuance of the OOS Orders was ultimately acknowledged on a Record of Consolidation Agreement.

**All in violation of 18 U.S.C. § 371.**

BENJAMIN C. GLASSMAN
UNITED STATES ATTORNEY

KENNETH L. PARKER
ASSISTANT UNITED STATES ATTORNEY